IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| CRAIG SPENCER CAPRON, | ) | |
| SHERI LYNN CAPRON, | ) | |
|     Debtors. | ) | Bankruptcy No. 10-00973 |
| ---------------------------------------- | | |
| CRAIG SPENCER CAPRON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary No. 10-09078 |
| | ) | |
| CEDAR RAPIDS ELECTRICAL | ) | |
| APPRENTICESHIP TRAINING | ) | |
| AND EDUCATIONAL TRUST, | ) | |
| A/K/A CEDAR RAPIDS | ) | |
| ELECTRICAL JATC, | ) | |
|     Defendant. | ) | |

**RULING ON DEBTOR'S COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT AND DEFENDANT'S COUNTERCLAIM
FOR DECLARATORY RELIEF**

This adversary matter arose from Plaintiff Craig Capron's Complaint to Determine Dischargeability of Debt, and the Counterclaim for Declaratory Relief of Defendant Cedar Rapids Electrical Apprenticeship Training and Educational Trust a/k/a Cedar Rapids Electrical JATC (the "JATC"). Henry Nathanson represented Plaintiff. Mark Rettig represented Defendant JATC. The Court held a trial on March 10, 2011. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Plaintiff participated in an electrical apprenticeship training program through the JATC. The issue before the Court is whether Plaintiff's debt incurred through the electrical apprenticeship program is an "educational loan" that is non-dischargeable under 11 U.S.C. § 523(a)(8). The Court holds that Plaintiff's debt is an "educational loan" under § 523(a)(8) and is not dischargeable.

## FACTS AND PARTIES' ARGUMENTS

The JATC operates an apprenticeship training program to allow its participants to acquire specialized skills necessary for employment in the electrical industry. The program includes both classroom teaching and field work. JATC is sponsored by Local Union 405 of the International Brotherhood of Electrical Workers and the Iowa Chapter of National Electrical Contractors Association. The JATC is classified as a 26 U.S.C. § 501(c)(3) educational organization under the Internal Revenue Code. It therefore is exempt from federal income taxation under 26 U.S.C. § 501(a).

In exchange for receiving valuable electrical industry education and training on a scholarship basis, apprentices agree to repay their scholarship loan upon graduation through in-kind work credits, making cash payments, or a combination of both. Apprentices who graduate from the JATC program are eligible to work as journeyman electricians. Journeymen earn work credits by working in the electrical industry under the terms of collective bargaining agreements. The collective bargaining agreements provide for the payment of contributions by employers to the JATC (or to another union-sponsored JATC).

Plaintiff participated in the JATC training program as an electrical apprentice. To receive his training, Plaintiff executed a Scholarship Loan Agreement and Promissory Note with the JATC on October 3, 2007, which covered the cost of his training for the training period of June 1, 2007 through May 31, 2008. Plaintiff executed a second Scholarship Loan Agreement and Promissory Note on July 29, 2008, which covered the cost of his training for the training period of June 1, 2008 through May 31, 2009. Each Scholarship Loan Agreement states that "the amount of the Scholarship Loan for the [year] of training covered by this Agreement is $2,500." Each document states that "The Scholarship Loan may be repaid by the Apprentice in full either in cash . . . or by in-kind credits . . . ." Further, "in the event that the Apprentice's training agreement is terminated . . . the [JATC] may require the Apprentice to repay, in cash, the pro-rata portion of the amount of the Scholarship Loan . . . corresponding to that period of training received by the Apprentice."

Under the terms of the training program, Plaintiff was required to report for on-the-job training assignments within the program's employment jurisdiction. On May 24, 2009, near the end of his second training year, Plaintiff was notified of an on-the-job training assignment in Cedar Falls, IA. Plaintiff reported that he had car trouble, and could not travel to the job site. Plaintiff's failure to report for this assignment resulted in the JATC terminating his participation in the electrical apprenticeship training program. The JATC's termination of Plaintiff's apprenticeship triggered the repayment provisions in each Scholarship Loan Agreement and Promissory Note.

The JATC sought to reduce its right to payment through arbitration as provided in the Scholarship Loan Agreement. On February 16, 2010, JATC received an arbitration award in settlement of its claims under the Scholarship Loan Agreement and Promissory Note. The award required Plaintiff to "pay to [JATC] the sum of $2,500 plus 7.75% interest from October 3, 2007

3

with regard to the Scholarship Loan Agreement and Promissory Note dated October 3, 2007 and $2,500.00 plus 5.00% interest from July 29, 2008 with regard to the Scholarship Loan Agreement and Promissory Note dated July 29, 2008." The award also required Plaintiff to pay to JATC attorney fees of $2,200.00, and $35.67 for other costs. The award also required the administrative fees and expenses of the American Arbitration Association totaling $750.00 and the arbitrator compensation and expenses totaling $250.00 to be "borne as incurred."

The JATC then sought confirmation and enforcement of the arbitrator's award by filing suit in the United States District Court for the Northern District of Iowa. Plaintiff failed to answer or respond. The District Court clerk entered a default against the Plaintiff on April 5, 2010. Plaintiff has not made any payment toward the debt that he owes to the JATC under the arbitration award.

Plaintiff and his wife filed a joint Petition for Chapter 7 bankruptcy on April 12, 2010. On the Schedule F list of creditors holding unsecured nonpriority claims, Plaintiff listed JATC's claim in the amount of $7,200.00. Plaintiff then brought this adversary proceeding to determine the dischargeability of the debt he owes to the JATC.

Plaintiff argues that the debt is not an "educational loan" under 11 U.S.C. § 523(a)(8). He argues the scholarship agreement is primarily intended to benefit the union and associated contractors by funneling trainees to the signatory union contractors that sponsor the JATC. Alternatively, Plaintiff analogizes these facts to cases in which courts have held that non-payment of a tuition bill, without an agreement by the lender to make a transfer in return for a future payment, did not qualify as an educational loan under § 523(a)(8). As such, he argues the JATC debt does not qualify as an exception to discharge under § 523(a)(8).

4

The JATC argues that Plaintiff's debt is an educational loan that is non-dischargeable under 11 U.S.C. § 523(a)(8). The JATC argues that the broad statutory language does not limit non-dischargeable "educational loans" to those received at institutions of higher learning. "Trade-sponsored" training programs also fall within the statute. As with other scholarships and extensions of credit, the JATC argues no transfer of money is necessary for this training scholarship to constitute a loan under § 523(a)(8).

The JATC also argues that Plaintiff failed to raise an issue with the validity of the JATC's claim during arbitration; as a result, its arbitration award is entitled to res judicata effect. The JATC argues that Plaintiff is estopped from collaterally attacking the validity of his debt to the JATC. Because the Court holds that the merits of the underlying dispute are dispositive in favor of the JATC, the Court need not reach the res judicata/collateral estoppel issue.

## CONCLUSIONS OF LAW

The issue before the Court is whether Plaintiff's debt incurred through an electrical apprenticeship program is non-dischargeable as an educational loan under 11 U.S.C. § 523(a)(8).

"The Bankruptcy Code is silent as to who bears the burden of proof necessary to establish an exception to discharge under § 523(a)." Grogan v. Garner, 498 U.S. 279, 282 (1991). Plaintiffs have the burden of proving the elements of their § 523(a)(8) claim by a preponderance of the evidence. See id. at 286–87. "Exceptions to discharge are usually narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code." Islamov v. Ungar (In re Ungar), 429 B.R. 668, 673 (B.A.P. 8th Cir. 2010) (citations omitted).

5

Section 523(a)(8) section states:

> (a) A discharge under section 727 . . . of this title <u>does not discharge an individual debtor from any debt</u>—
>> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, <u>for</u>—
>>> (A)(i) <u>an educational benefit overpayment or loan</u> made, insured, or guaranteed by a governmental unit, or <u>made under any program funded in whole or in part by a</u> governmental unit or <u>nonprofit institution</u>; or
>>>  (ii) an <u>obligation to repay funds received as an educational benefit, scholarship</u>, or stipend; or
>>> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

(emphasis added). "While the vast majority of student loan dischargeability cases deal with educational financing to attend post-secondary institutions of higher learning, trade-sponsored training programs can also fit within the statute." <u>In re Stephens</u>, 2011 WL 672000 (Bankr. D. Neb. Feb. 17, 2011) (citations omitted).

A majority of cases hold that debts for training in the trades under similar JATC agreements are "educational loans" that may be excepted from discharge under § 523(a)(8) if the debtor is unable to establish undue hardship. <u>Stephens</u>, 2011 WL 672000 at *3; <u>Indiana/Kentucky Reg'l Council of Carpenters Joint Apprenticeship & Training Comm. v. Kesler</u> (<u>In re Kesler</u>), 401 B.R. 356, 363 (Bankr. S.D. Ill. 2009); <u>Zlotopolski v. Dressel</u> (<u>In re Dressel</u>), 212 B.R. 611, 615 (Bankr. E.D. Mo. 1997); <u>Plumbers Joint Apprenticeship & Journeyman Training Comm. v. Rosen</u> (<u>In re Rosen</u>), 179 B.R. 935, 940 (Bankr. D. Or. 1995). All four of the above cases contain facts that are similar to this case and specifically involved a JATC scholarship training program. In <u>Rosen</u>, the court organized its analysis for determining whether a debt is an "educational loan" under § 523(a)(8)(A)(i) as follows: 1) whether the debt is an educational obligation; 2) whether the

debt is for a loan; and 3) whether the debt for a loan was made under a program funded by a nonprofit institution. Rosen, 179 B.R. at 938–40.

On the first question, the court observed that educational loans are nondischargeable in order "to preserve the solvency of student loan programs so that funds will be available for future students." Rosen, 179 B.R. at 938 (citing In re Palmer, 153 B.R. 888, 893 (Bankr. D.S.D. 1993)). The court observed that the JATC relied for its solvency primarily on financial contributions from signatory parties to collective bargaining agreements. Id. at 939. The employers' financial contributions to the JATC were based on the in-kind credits that JATC graduates earned while working for the contributing employers. Id. The court found that if an apprentice failed to work for an employer who was a signatory to a collective bargaining agreement, the employer would not make financial contributions to the JATC based on the apprentice's in-kind work credits. Thus, the apprentice would not be helping to repay the costs of the training. Id. The court noted:

> The failure to pay the obligation under the Scholarship Loan Agreement, either by in-kind repayment credits or by cash payments will have the same negative effect on the solvency of the apprentice training program as a failure to repay any student loan will have on any student loan program.

Id. Put another way, this type of apprenticeship program is "self-funded and self-perpetuating" as long as all participants perform their role. Dressel, 212 B.R. at 615.

In Rosen, the court concluded the JATC was an educational program because it offered on-the-job training and classroom education that gave participants the knowledge and experience to obtain a professional license. 179 B.R. at 939. The court found the amounts due for the Scholarship Loan Agreement obligation represented the debtor's share of the costs of instructors, facilities, materials, and supplies. Id.

7

The second question in the Rosen court's analysis is whether a trade-sponsored training scholarship constitutes a "loan." "The Bankruptcy Code does not define the term 'educational loan.'" See United States Dept. of Health and Human Servs. v. Smith, 807 F.2d 122, 126 (8th Cir. 1986) (interpreting "educational loan" and concluding funds received under Physician Shortage Area Scholarship Program satisfied definition of loan where medical student received scholarship with obligation to repay if he did not practice in designated physician shortage areas) (emphasis added). In Stephens, one of the four majority decisions on this issue, the court held that for purposes of § 523(a)(8), a transfer of money is not necessary to create an educational loan. 2011 WL 672000 at *2. Citing the Eighth Circuit Bankruptcy Appellate Panel, the court noted that "[a] college's extension of credit to a student for tuition, books, and other expenses constitutes a loan within the meaning of the discharge exception for student loan debt, even though no money actually changes hands." Id. (citing Johnson v. Missouri Baptist Coll. (In re Johnson), 218 B.R. 449, 454–57 (B.A.P. 8th Cir. 1998)).

The third question looks at whether the JATC qualified as a nonprofit institution. In Rosen, the JATC qualified as a 501(c)(3) nonprofit organization that was exempt from federal income taxation. 179 B.R. at 940. The court noted that § 501(c)(3) by its terms prevents the organization from distributing its net earnings to any private shareholder or individual. Id. at 941. The court also applied common law principles to decide whether the JATC was entitled to nonprofit status. Id. The court noted that the JATC's Restated Agreement and Declaration of Trust did not provide the trustees of the JATC Trust with authority to pay dividends. Instead, assets of the trust were held and applied for the "exclusive purpose of providing apprenticeship and training instruction and for defraying reasonable expenses." Id. "The fact that the Training Trust may have accumulated assets

8

does not mean that it is a for-profit enterprise under these circumstances." Id. The court concluded the JATC qualified as a nonprofit institution. Id.

One case goes against the "majority" view and concludes that a JATC agreement for technical training, like the training in this case, was not an educational loan. In re Rezendes, 324 B.R. 689 (N.D. Ind. 2004), aff'g In re Rezendes, 318 B.R. 436 (Bankr. N.D. Ind. 2004). In that case, the debtor executed a series of three scholarship loan agreements with a JATC to receive technical training in the field of plumbing and pipefitting. Id. at 691. The agreements provided that the debtor could repay the cost of training by working for a signatory to the JATC agreement. Id. The agreements provided that debtor could breach the agreement by working for a non-signatory plumbing and pipefitting employer. Id. Debtor's breach would trigger his liability to pay for his training. Id. Unlike the Scholarship Loan Agreement here, if the debtor in Rezendes found work outside the field of plumbing and pipefitting, the debtor would not incur any liability for the cost of his education. Id.

The District Court concluded that the scholarship loan agreement was for an educational purpose, but did not constitute a "loan." Rezendes, 324 B.R. at 689. In other words, the scholarship agreement failed on the second part of the Rosen test. The District Court reasoned that because the agreement did not require repayment for workers who took jobs outside the plumbing and pipefitting industry, the agreement did not satisfy the definition of a loan. The court relied on the Seventh Circuit's decision in In re Chambers, 348 F.3d 650, 655 (7th Cir. 2003). The District Court stated "the extension of credit by an educational institution only falls within the definition of loan under two circumstances; first, when money changes hands; and second, when there is an agreement prior to or simultaneous with the educational services by which the institution extends

9

credit." Id. at 694 (citing Chambers, 348 F.3d at 657). The District Court held that there was no "agreement prior to or simultaneous with the educational services by which the institution extends credit." Id. In reaching that conclusion, the District Court relied on the fact that the scholarship agreement did not require repayment if the debtor did not go to work at all in the industry. The court distinguished the majority view—which at the time was the Rosen and Dressel cases—because on their facts neither of the scholarship agreements contained a waiver provision for trainees who did not use their training in an industry job. Id. at 696.

The Rezendes opinions rely on other case law not directly addressing JATC programs. Plaintiff asserts those cases are relevant as additional authority here. In particular, Plaintiff asks the Court to consider the Seventh Circuit's Chambers opinion on the question of when an extension of credit qualifies as an educational loan. In Chambers, the Seventh Circuit concluded that a debtor's unpaid balance on an open student account was not an educational loan under § 523(a)(8). Following the analytical framework of the Second Circuit in Cazenovia College v. Renshaw (In re Renshaw), 222 F.3d 82, 89–90 (2d Cir. 2000), the Seventh Circuit applied the common law definition of a loan. Chambers, 348 F.3d at 657. That definition, mentioned above, requires money to change hands or a prior or simultaneous agreement by which the educational institution extends credit. Id. The court in Chambers held that the debtor's open student account was not a loan because even though it was an extension of credit, there was no contemporaneous agreement that acknowledged and delayed the debtor's obligation to repay the debt. Id.

According to Plaintiff, the Rezendes opinion was also influenced by the case of In re McFayden, 192 B.R. 328 (Bankr. N.D.N.Y. 1995). In that case, the debtor had signed a scholarship agreement with a hospital to obtain training as a registered nurse. Id. at 330. The loan was

10

contingent on Debtor's continued employment with the hospital for a period of three years. Id. Under the terms of the agreement, the debtor was required to reimburse the hospital in full, plus 15% interest, if the debtor terminated her employment before the three years elapsed. Id.

The court in McFayden applied the three-part test that the court used in Rosen. Id. at 332. The court noted that if the debtor had worked for all but the last month of her 36-month employment term, she would have had to repay the entire cost of her training. The court concluded that the "all or nothing" nature of the program "was intended not as an educational benefit to the [debtor], but rather . . . was intended to benefit the [hospital] by assuring that it had a qualified nursing staff on a relatively long-term basis." Id. at 333. As such, the loan failed the first element of the Rosen test: it was not made for educational purposes. Id.

## DISCUSSION

After carefully considering this well-argued and well-briefed case, the Court adopts the "majority view" and concludes the JATC debt is a nondischargeable educational loan under § 523(a)(8)(A)(i). The agreement here satisfies the three-part test some of those courts apply.

Under the first part of the test, Plaintiff's debt with the JATC is an "educational obligation." Rosen, 179 B.R. at 938. The job training and classroom education gives apprentices the knowledge and experience to obtain a professional license. Each apprentice's scholarship loan represents his or her share of the cost of instructors, facilities, materials, and supplies. The Court finds that the JATC has the key characteristics of an educational program. Further, unlike the loan in McFayden, this agreement could have been repaid in cash at any time. The repayment amount could have been reduced in an orderly way by the number of in-kind work credits that the

11

journeyman electrician earned. Thus, unlike the agreement in McFayden, this was not an "all or nothing" agreement whereby the JATC's business needs eclipsed the fact that the apprentice was receiving a valuable trade education. Because of this, the Court finds that the evidence establishes that Plaintiff's debt with the JATC is an "educational obligation" under the first part of the test.

As to the second part of the test, the educational obligation Plaintiff owes to the JATC is a "loan." Unlike in Rezendes, the Scholarship Loan Agreement does not contain a waiver provision if Plaintiff decided to work outside the industry. These facts are also distinguishable from the Chambers case. As discussed, in that case, the court held that a debtor's balance under an open student account with a university was not a "loan," but merely an extension of credit. In making that determination, the court emphasized the fact that the debtor had not contemporaneously executed any agreement that solidified and delayed debtor's obligation to repay the student account balance. That scenario is distinguishable from the present facts. Plaintiff and the JATC executed a Scholarship Loan Agreement and Promissory Note near the time that Plaintiff started each training year. The first paragraph of each Promissory Note states "[f]or value received in the form of education and training in the specialized skills necessary for employment in the Electrical Industry, I, [Plaintiff], promise to pay to the [JATC], two thousand five hundred dollars ($2,500.00) . . . ." Thus, under the Chambers formulation of a loan, the parties executed an "agreement to transfer educational services in return for later payment . . . prior to or contemporaneous with the transfer of those educational services." Chambers, 348 F.3d at 657. The Court finds that Plaintiff's educational obligation to the JATC is a loan.

Debtor does not dispute that the JATC is a nonprofit organization and thus satisfies the third and final part of the test. The facts and applicable considerations show that it is. As a result,

12

the Court finds that an educational loan agreement existed between Plaintiff and the JATC under § 523(a)(8)(A)(i). Plaintiff has not raised any argument that paying the loans would cause an "undue hardship" to him or his dependents. The Court thus holds that Plaintiff's debt with the JATC is an educational loan under § 523(a)(8), and is not dischargeable in bankruptcy.

The Court makes no judgment whether the JATC is entitled to its request for relief from the automatic stay in its Counterclaim. The relief from stay issue was not argued during the trial of this matter. If the JATC desires to obtain relief from the automatic stay under § 362, the JATC shall file a separate Motion for Relief from Stay for consideration by the Court.

## CONCLUSION

Debtor Craig Capron's debt incurred through the electrical apprenticeship program with the Cedar Rapids Electrical Apprenticeship and Training Educational Trust is non-dischargeable in bankruptcy as an educational loan under 11 U.S.C. § 523(a)(8). The Court denies the JATC's request for relief from the automatic stay in its Counterclaim. If the JATC desires to obtain relief from the automatic stay under § 362, the JATC shall file a separate Motion for Relief from Stay for consideration by the Court.

**WHEREFORE,** Plaintiff's Complaint to Determine Dischargeability of Debt is DENIED;

**FURTHER,** Defendant's Counterclaim is GRANTED in part and DENIED in part.

Dated and entered: June 10, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

13